IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs at Knoxville May 17, 2017

**JAMES HOOVER v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Tipton County**
**No. 8281         Joseph H. Walker, Judge**

———————————————————

**No. W2016-01695-CCA-R3-PC**

———————————————————

The Petitioner, James Hoover, pleaded no contest to vehicular homicide and vehicular assault. The trial court entered the sentence agreed to by the parties: twelve years. The Petitioner then filed a petition for post-conviction relief in which he alleged that his counsel had been ineffective, rendering his plea unknowingly and involuntarily entered. After a hearing, the post-conviction court denied the Petitioner relief, and after review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J. and JOHN EVERETT WILLIAMS, J., joined.

Jeremy T. Armstrong, Covington, Tennessee, for the appellant, James Hoover.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Sean G. Hord, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

In July 20, 2015, the Petitioner pleaded no contest to vehicular homicide and vehicular assault. At the hearing on the plea, the State first noted that the incident included four counts: Count 1 was aggravated vehicular homicide, a Class A felony; Count 2 was DUI, per se, a Class A misdemeanor; Count 3 was Notice of a prior DUI; and Count 4 was vehicular assault, a Class D felony. The State informed the trial court that the parties had agreed to allow the Petitioner to plead no contest in Count 1 to the lesser-included offense of vehicular homicide, a Class B felony, and in Count 4 to vehicular assault and that the State would dismiss the remaining charges. The State also

informed the trial court that the parties had agreed that the Petitioner's sentence would be ten years, served at thirty percent, for the Class B felony and two years, served at thirty percent, for the Class D felony.

The State articulated the facts supporting the convictions as follows:

> This case stems from a motor vehicle crash that happened on July 6, 2013, when the THP responded to a motor vehicle crash near what we know as The Farm Club on Highway 51 here in Tipton County.
>
> From the Investigation the THP did determine that [the Petitioner] was the unrestrained operator of a 2001 Chevrolet Impala traveling northbound on U.S. 51 in the southbound lane.
>
> Ray Allen was the unrestrained operator of a 2012 Nissan Altima that had just entered onto the southbound lane of U.S. 51 coming from a commercial driveway. Antonio Norfolk was an unrestrained passenger in that right front seat of the 2012 Nissan Altima driven by Ray Allen. Norfolk, Antonio Norfolk, was killed as a result of the crash.
>
> A sample of [the Petitioner's] blood was collected by the Regional Medical Center the day of the crash. A search warrant was obtained for the blood sample. That blood sample was then given to the Tennessee Bureau of Investigation crime lab for testing, and it was determined that [the Petitioner's] blood sample contained 0.26 of ethyl alcohol. The official toxicology report determined that [the Petitioner's] blood . . . also contained THC. The driver of the other car had zero alcohol in his system.
>
> After the impact, Allen's vehicle rotated counter-clockwise. Allen's vehicle came to a final rest in the southbound lane of U.S. 51 facing north. At the time that the two vehicles collided, [the Petitioner], . . . was traveling a minimum of 71 miles per hour, and Allen, the driver of the other car who was injured with serious bodily injury during the crash which would account for the vehicular assault in Count 2, was traveling at a minimum of 14 miles per hour.
>
> It was the conclusion of the THP based upon their investigation that the crash was the result of [the Petitioner] operating his vehicle while under the influence of alcohol, traveling north in the southbound lane of U.S. 51 and causing a head-on collision with the driver of the other vehicle, Mr. Allen.

The Petitioner's attorney, Counsel, informed the trial court that the guilty plea was "no contest" because, while there were multiple witnesses and an extensive investigation in this case, the Petitioner believed that he was the person rightfully headed south and that he was hit by another car. Counsel noted that the Petitioner had been very seriously injured in the accident.

The Petitioner testified at the guilty plea hearing. He said that he understood the charges against him and that he understood he had a right to seek a jury trial. He acknowledged understanding that, by pleading guilty, he was waiving his right to appeal. The trial court accepted the Petitioner's guilty plea and it imposed the sentence to which he agreed: ten years for the Class A felony conviction, which was the midrange of the applicable sentencing range; and two years for the Class D felony conviction, which was the minimum of the applicable sentencing range. The trial court agreed with the parties that these sentences would be served consecutively. The Petitioner agreed he understood the sentence and testified he was satisfied with Counsel's representation of him.

The Petitioner did not appeal, but on April 18, 2016, he timely filed a petition for post-conviction relief alleging that his guilty plea was involuntarily and unknowingly entered because he had received the ineffective assistance of counsel. The post-conviction court appointed him an attorney and held a hearing.

At the post-conviction hearing, the parties presented the following evidence: the Petitioner's counsel, "Counsel," a public defender, testified that he had tried approximately 150 cases in the twenty-four years he had been a practicing attorney. Counsel said that a case that was going to trial was more time consuming than one in which his client was going to enter a guilty plea. He explained that much of the time was spent teaching a client about the jury process, how to communicate effectively, not to lose his/her temper, etc. These discussions were unnecessary if his client pursued a plea. Counsel estimated that he would spend between three and ten hours initially on a guilty plea case.

Counsel testified that the trial court appointed him to represent the Petitioner at the preliminary hearing. He represented the Petitioner continually up through his guilty plea. Counsel said that he spent between two and four hours reviewing the discovery in this case, which included the witnesses' statements. Counsel discussed the case and discovery with Budell Huggins, an investigator. Counsel said that he studied the trooper's reports on the computer readouts from the cars involved in the accident. He said that he did not retain an expert to review the computer readouts.

Counsel agreed that one of the witnesses was Marquita Owens, whose statement was included in discovery. Counsel was unaware of any relationship between Ms. Owens and the victim, Mr. Allen. If he had been so aware, he would have investigated further. Counsel said that, had this case gone to trial, he likely would have further investigated any relationship between Mr. Allen and Ms. Owens. Counsel said that his investigator spoke with the two sisters who were both witnesses. Counsel said that the Petitioner believed that all of the witnesses and evidence against him had been staged because the victim, Mr. Allen, had a relative who was a State Trooper. On this basis, Counsel took "extra precautions" to make sure that the witnesses were being honest about what they had seen.

Counsel agreed that, in Mr. Allen's statement to police, he admitted that he consumed alcohol on the night of the accident. In discovery, he received a photograph of Mr. Allen's car, and there appeared to be an empty alcohol bottle on his floorboard. Counsel agreed that, had this case gone to trial, he would have used that evidence during Mr. Allen's cross-examination. Counsel believed that he discussed these facts with the Petitioner.

Counsel said that he sought for the Petitioner to serve his time at an institution suited for caring for people with physical and mental issues. He explained that the Petitioner had psychiatric issues in the past and that he had suffered multiple injuries and trauma in the accident. Counsel said that, despite this trauma, he believed that the Petitioner understood that he was entering a no contest plea that would result in a guilty plea for sentencing purposes. He said that the offer by the State was a good offer in this case and that the Petitioner would not have fared any better at trial. He noted that the Petitioner had three or four prior DUI convictions.

During cross-examination, Counsel testified that he had represented clients facing homicide charges in twenty to twenty-five trials, and he had represented clients facing DUI charges in ten to twelve trials. He said that he had been relatively successful when taking a case to trial, with the jury acquitting three of his clients facing homicide charges and finding the clients guilty of lesser-included offenses in other cases.

Counsel said that the witnesses' statements to his investigator were consistent with what they had told police. Further, the Petitioner provided him no useful information, in part because the Petitioner could not remember the events surrounding the accident. The Petitioner had been severely injured, which necessitated his spending "weeks if not months" in a hospital. Counsel said that the police tested Mr. Allen's blood alcohol content, and the level of alcohol in his system did not register. The Petitioner's blood alcohol level was .27.

Counsel agreed that there was an irregularity in the naming of the blood samples. He said that the State disclosed this fact to him, obtained a search warrant, and retested the blood samples to ensure that the blood containing a .27 blood alcohol level belonged to the Petitioner. Counsel opined that he would have been unsuccessful in an attempt to convince a jury that the State falsified these blood results.

Counsel said that the State provided him multiple photographs of the cars in this case. In the Petitioner's car, there was an empty half pint of vodka on the back seat of the car. The State also gave him the Petitioner's statement to the police. The Petitioner told the police that the he had consumed two twelve ounce cans of beer and then fallen asleep. He awoke hours later because his cousin called and wanted a ride. When the Petitioner was on his way to get his cousin, his cousin called and said he no longer needed a ride. The Petitioner told the police that he turned his car around, which was the last thing he remembered before awaking in the hospital. The Petitioner told the police that the other car hit him.

Counsel said that the Petitioner told him that he was going to the "farm club" at the time of the accident, which was inconsistent with his statement to police. Further, at the time of the accident, the Petitioner was not traveling in the direction of his home, which was also inconsistent with his statement to police.

Counsel testified that the report generated from the vehicles showed that the Petitioner's vehicle was traveling 71 miles per hour at the time of the accident while the victim's car was traveling within the speed limit, twenty-five to thirty miles an hour slower than the Petitioner. The witnesses said that the Petitioner was driving the wrong way on Highway 51, and the blood test showed that the Petitioner's blood alcohol level was .27. Counsel opined that these facts would likely lead to a conviction. The Petitioner faced a Class A felony conviction, which carried a punishment range of fifteen to twenty-five years. The plea agreement resulted in an effective sentence of twelve years.

The Petitioner testified that, on the night of the accident, he had dropped a friend off and was returning to his home in the southbound lane. He said that, before the accident, he consumed two cans of beer and that he had never in his life smoked marijuana. The Petitioner said that he contacted Counsel after the guilty plea because he wanted to appeal his convictions. He agreed that he waived his right to appeal during the guilty plea hearing but said that he did not understand that he was waiving his right to appeal. The Petitioner said that Counsel did not meet with him after he was appointed until shortly before the plea hearing and that Counsel never explained anything to him, including the evidence against him. The only thing Counsel told him was that there was a picture of the speedometer that showed that the Petitioner was traveling at 70 miles per

hour at the time of the accident. The Petitioner testified that, had he known that there had been a mix up with his blood, he never would have entered a no contest plea and instead would have taken the case to trial.

During cross-examination, the Petitioner testified that he did not understand that when he pled "no contest" it would be the same as a guilty plea. He said that Counsel "didn't really explain nothing to me." He further said that the trial judge did not explain this to him either. He also did not remember the trial judge informing him that he was waiving his right to appeal. The Petitioner testified that he did not remember the trial judge's explanation of his plea and the rights that he was waiving.

During redirect examination, the Petitioner testified that he had suffered long-term physical issues from the accident. Further, he said that his injuries affected his memory.

Based upon this evidence and the arguments of counsel, the post-conviction court denied the Petitioner's petition for post-conviction relief, finding that the Petitioner had not shown that Counsel was deficient in any regard. The post-conviction court issued an order stating:

> The Court finds that the [Petitioner] at the time of the plea understood the significance and consequences of the particular decision to enter a plea, and the decision was not coerced. The [Petitioner] was fully aware of the direct consequences of the plea, including the sentence actually received. He failed to show that any promise or inducement was made for the entry of the plea other than the State agreeing to an agreed sentence at a lesser service.
>
> The Court finds that [Counsel] provided adequate assistance.
>
> Petitioner failed to show any deficient performance by his attorney or that he was prejudiced.
>
> A plea hearing is not a mere formality. It serves to ensure that the defendant understands his rights and the terms of his plea. *State v. Neal*, 810 S.W.2d 131. In this case the [P]etitioner was explained his rights, and the terms of the plea, and stated that he understood what he was doing, and he had been over the plea form with his attorney, and that he understood the procedure and his rights, and that he understood the plea agreement terms.

He alleges that his attorney did not properly investigate his case. Petitioner failed to show in what way his attorney failed to investigate, or how he was prejudiced by failure to investigate.

The Court finds that [P]etitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence. . . . The [P]etitioner has not shown that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial. The [P]etitioner has not shown that the services rendered or the advice given was below the range of competence demanded of attorneys in criminal cases. The [P]etitioner has not shown that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

The Court finds that the [P]etitioner knowingly and voluntarily entered a plea, that [the Petitioner] actually understood the significance and consequences of the plea and sentence. The Court finds that the [P]etitioner was not coerced into entering a plea.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner asserts that Counsel was deficient for not consulting with him regarding the evidence against him so as to allow the Petitioner to participate in his own defense. Further, he asserts that Counsel was ineffective because he failed to move to suppress the blood evidence. The Petitioner contends that Counsel's ineffective assistance rendered his guilty plea unknowing and involuntary, in part because of his altered mental state as a result of the accident. The State counters that there was no evidence of the existence of any mental incompetency to support the Petitioner's contention that his guilty plea was unknowing or involuntary. Further, the State asserts that the Petitioner has not established that Counsel's representation was deficient. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156

(Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."

*Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

This standard also applies to claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy the requirement of prejudice in a case involving a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he or she "would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). A petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable

barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

We conclude that the evidence does not preponderate against the trial court's findings of fact. Counsel testified that he met with the Petitioner to discuss his case and review the discovery file. Counsel gave to the Petitioner everything that he had received from the State. Counsel also employed an investigator to interview witnesses, and he watched recordings of those interviews. Counsel said that the State disclosed that there may have been a mix-up with the blood sample, so the State obtained a search warrant to ensure that the Petitioner's blood matched the blood sample. The State then retested the remaining blood drawn from the Petitioner, confirming both his identity and the blood alcohol level of his blood. We agree with the post-conviction court that Counsel's failure to pursue a motion to suppress this evidence was not deficient. Further, the Petitioner was facing a lengthy sentence for killing someone while driving intoxicated, having already incurred several DUI convictions. Counsel effectively negotiated a plea agreement in which the Petitioner pleaded guilty to a lesser-included offense and received a substantially shorter sentence. The Petitioner cannot prove that, but for any error on Counsel's part, he would not have pleaded guilty and would have insisted on going to trial.

We also conclude that the Petitioner has not shown that his plea was entered unknowingly or involuntarily based on his mental state. The guilty plea hearing was held a full year after the accident. The Petitioner had been released from the hospital months before the hearing. The fact that the Petitioner does not recall the accident, which is understandable since his blood alcohol level was .27 at the time of the accident, does not render his guilty plea unknowing or involuntary. The Petitioner has not provided any evidence that shows that his plea was not knowingly and voluntarily entered. Accordingly, we conclude that the Petitioner is not entitled to relief.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the post-conviction court's denial of the Petitioner's petition for post-conviction relief.

_____
ROBERT W. WEDEMEYER, JUDGE